1   **WO**

2

3

4

5

6                        IN THE UNITED STATES DISTRICT COURT

7                            FOR THE DISTRICT OF ARIZONA

8

9   Christopher Eugene Thomas,            )      CV 23-00385-TUC-RM (MAA)
                                          )
10              Petitioner,               )      **REPORT AND RECOMMENDATION**
                                          )
11  vs.                                   )
                                          )
12  Ryan Thornell; et al.,                )
                                          )
13              Respondents.              )
                                          )
    _____)

14

15          Pending before the court is a petition for writ of habeas corpus, constructively[1] filed on

16  August 9, 2023, by Christopher Eugene Thomas, an inmate held in the Arizona State Prison

17  Complex in Winslow, Arizona.  Petition, Doc. 1;  Doc. 11.

            Pursuant to the Rules of Practice of this court, the action was referred to the Magistrate
18
    Judge for a report and recommendation.  Doc. 12.
19
            The Magistrate Judge recommends that the District Court, after its independent review
20
    of the record, enter an order dismissing the petition because Thomas's Fourth Amendment claim
21
    is time-barred and his state court jurisdiction claim is time-barred or not cognizable.
22
            Also pending is the petitioner's motion to amend the petition, filed on July 9, 2024.  Doc.
23
    20.  The motion should be denied as futile because the claims in the proposed amended petition
24
    would also be time-barred or not cognizable.
25
            Also pending is the petitioner's motion for an evidentiary hearing, filed on July 24, 2024.
26
    Doc. 22.  The petitioner seeks to relitigate his Fourth Amendment claim that he was arrested in
27

28  _____
            [1] Thomas placed his petition in the prison mailing system on August 9, 2023.  Doc. 1, p. 12.

1   California without probable cause.  *Id*.  The motion should be denied because his proposed

2   evidentiary hearing will not affect the court's finding that his claims are time-barred or not

3   cognizable.

4

5   Summary of the Case

6      On April 18, 2002, the Los Angeles police stopped a pickup truck that Thomas was

7   driving for "speeding and traveling the  wrong way on a one-way street."  Direct Appeal, Doc.

8   17-2, p. 92;  *see also* Suppression Hearing, Doc. 23-2, pp. 17-18.  A subsequent search of the

9   vehicle uncovered a handgun, and Thomas was arrested for carrying a concealed weapon.  Doc.

10  17-2, pp. 93-94.  Police soon discovered that the vehicle belonged to a Mr. A., who was found

11  murdered in his home in Sahuarita, Arizona.  *Id*.

12     Thomas was transferred to Arizona where he was prosecuted in Pima County Superior

13  Court.  Doc. 22-1, p. 2.  Thomas filed a motion to suppress evidence arguing that he was

14  arrested absent probable cause in violation of the Fourth Amendment.  Doc. 17-1, p. 21.  The

15  trial court held an evidentiary hearing, but it denied the motion to suppress on May 11, 2004.

16  Doc. 17-1, p. 25; *see also* Suppression Hearing, Doc. 23-2, p. 2.

17     On May 21, 2004, Thomas was convicted after a jury trial for first degree murder, theft

18  of a means of transportation, and burglary in the first degree.  Doc. 17, pp. 1-2;  Doc. 17-1, p.

19  28.  On June 11, 2004, he was sentenced to consecutive prison terms of natural life, seven years,

20  and 10 years, respectively.  Doc. 17, p. 2;  Doc. 17-1, pp. 30-32.

21     "On appeal, Thomas challenge[d] the trial court's denial of his motion to suppress

22  evidence and its admission of evidence of prior acts."  Doc. 17-2, p. 92  "Thomas further

23  contend[ed] there was insufficient evidence supporting his conviction for first-degree murder,

24  and assert[ed] that the felony-murder statute, upon which that conviction was based, is

25  unconstitutional."  *Id*.  The Arizona Court of Appeals affirmed his convictions and sentences

26  on April 25, 2005.  Doc. 17-2, pp. 91-113.

27     On the Fourth Amendment issue, the court of appeals held that Thomas's motion to

28  suppress evidence taken from the pickup truck was properly denied because "[a] person who

1   is driving a stolen vehicle is without a legitimate expectation of privacy in that vehicle's
2   contents." Doc. 17-2, p. 95. The court further explained that "Thomas . . . may not avoid this
3   outcome by attempting to recharacterize the 'threshold issue' as an illegal arrest . . . nor can he
4   circumvent the standing issue by claiming his consent to the search was not voluntarily given."
5   Doc. 17-2, p. 96.

6       Thomas appealed to the Arizona Supreme Court, but that court denied review. Doc. 17,
7   p. 3. The respondents maintain that the court denied review on October 3, 2005. Doc. 17, p.
8   3. The court assumes, without deciding, that the respondents are correct. *But see* Doc 1, p. 3
9   (Thomas asserts that review was denied on September 29, 2005); *see also* Doc. 17-2, p. 119.

10      Almost five years later, Thomas filed an untimely notice of post-conviction relief on May
11  20, 2010. Doc. 17, p. 3. The court excused the untimeliness and accepted the filing in an order
12  dated June 17, 2010. *Id.* On April 13, 2011, post-conviction relief counsel filed a brief
13  explaining that he could find no colorable claims and requesting permission for Thomas to file
14  a petition *pro se. Id.*, pp. 3-4; Doc. 17-4, p. 18. The court granted Thomas permission, but he
15  did not file a brief, and the court dismissed the proceedings. *Id.*, p. 4; Doc. 17-6, pp. 2, 7.

16      On March 9, 2021, Thomas filed in state court a petition for writ of habeas corpus
17  pursuant to A.R.S. §§ 13-4121, 13-4131(A). Doc. 17, p. 4; Doc. 17-6, p. 9. He argued that he
18  was being detained illegally because the Arizona Superior Court lacked jurisdiction to consider
19  any matters arising from his California traffic stop. Doc. 17-6, p. 12. The state court
20  "summarily dismissed" the petition on March 18, 2021, because it was "not verified" and there
21  was "no showing that Defendant's imprisonment is unlawful." Doc. 17, p. 4; Doc. 17-6, p. 16.
22  On December 28, 2021, the Arizona Court of Appeals affirmed. *Id.*; *Thomas v. Shinn*, 2021
23  WL 6124231, at *1 (Ariz. Ct. App. Dec. 28, 2021). The court of appeals explained that "in
24  Arizona, the writ of habeas corpus may be used only to review matters affecting a court's
25  jurisdiction." *Thomas v. Shinn*, 2021 WL 6124231, at *1 (Ariz. Ct. App. Dec. 28, 2021). The
26  court further stated that, "Thomas has not shown that the trial court here lacked jurisdiction
27  based on his previously rejected claim of a Fourth Amendment violation." *Id*. On August 10,
28  2022, the Arizona Supreme Court denied review. Doc. 17, p. 5.

On August 9, 2023, Thomas constructively filed the pending petition for writ of habeas corpus in this court. Doc. 1. He argues (1) his Fourth Amendment rights were violated and (2) "the state court lacked jurisdiction of the subject matter or over the Petitioner in State court hearing." Doc. 1, pp. 5-7, *see also Thomas v. Shinn*, 2021 WL 6124231, at *1 (Ariz. Ct. App. Dec. 28, 2021) (affirming the dismissal of the state habeas petition). Thomas asserts that he raised these issues in his state habeas petition. Doc. 1, pp. 6-7; *see* Doc. 17-6, pp. 9-14.

The respondents filed an answer on May 3, 2024, in which they argue, among other things, that Thomas's claims are time-barred or not cognizable. Doc. 27. Thomas filed a motion to extend the time for filing a reply, which the court granted on May 23, 2024. Doc. 19.

Thomas, however, did not file a reply. Instead, he filed the pending motion to amend the petition on July 9, 2024. Doc. 20. The respondents filed a response opposing the motion on July 15, 2024. Doc. 21. They argue, among other things, that it would be futile to file the proposed amended petition. *Id*. Thomas did not file a reply.

The respondents are correct. Thomas's claims are either time-barred or not cognizable. The motion to amend should be denied as futile because the claims in the proposed amended petition would also be time-barred or not cognizable. Thomas's argument that he is "actually innocent," which appears in his proposed amended petition, does not excuse his failure to file a timely petition.

On July 24, 2024, Thomas filed the pending motion for an evidentiary hearing to further investigate the circumstances of the initial traffic stop. Doc. 22. The motion should be denied. As the respondents explain in their response, Thomas is not entitled to discovery or an evidentiary hearing under the Antiterrorism and Effective Death Penalty Act, which currently governs habeas corpus practice and procedure. Doc. 23. Moreover, his proposed evidentiary hearing will not affect the court's findings that his claims are time-barred or not cognizable. Thomas did not file a reply brief.

1       <u>Discussion</u>

2       The writ of habeas corpus affords relief to persons in state custody "in violation of the

3   Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The writ is not

4   available to remedy a claim that the petitioner is in custody for some other reason.

5       In his first claim, Thomas argues that his Fourth Amendment rights were violated when

6   he was arrested without probable cause in California. Doc. 1, p. 5. This claim is time-barred.

7       The statute reads in pertinent part as follows:

8       (1)    A 1-year period of limitation shall apply to an application for a writ of
               habeas corpus by a person in custody pursuant to the judgment of a State
9              court. The limitation period shall run from the latest of--

10             (A)    the date on which the judgment became final by the conclusion of
                      direct review or the expiration of the time for seeking such review;
11
12             (B)    the date on which the impediment to filing an application created
                      by State action in violation of the Constitution or laws of the
13                    United States is removed, if the applicant was prevented from
                      filing by such State action;

14             (C)    the date on which the constitutional right asserted was initially
                      recognized by the Supreme Court, if the right has been newly
15                    recognized by the Supreme Court and made retroactively
                      applicable to cases on collateral review; or
16
               (D)    the date on which the factual predicate of the claim or claims
17                    presented could have been discovered through the exercise of due
                      diligence.
18
        (2)    The time during which a properly filed application for State
19             post-conviction or other collateral review with respect to the pertinent
               judgment or claim is pending shall not be counted toward any period of
20             limitation under this subsection.

21  28 U.S.C. § 2244(d). The one-year limitation period applies to each claim in a habeas corpus

22  petition on an individual basis. *Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2012).

23      Thomas argues that his Fourth Amendment rights were violated. Doc. 1, p. 5. He further

24  asserts that he did not receive a "full and fair hearing"in the state court. Doc. 1, p. 5.[2]  All of

25  _____

26      [2]  Thomas might have included this assertion because "[a] Fourth Amendment claim is
    not cognizable in federal habeas proceedings if a petitioner has had a full and fair opportunity
27  to litigate the claim in state court." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996),
    as amended (May 8, 1996)  (citing *Stone v. Powell*, 428 U.S. 465, 481–82, 96 S.Ct. 3037,
28

the facts underlying this claim were known to Thomas prior to his trial. A version of this claim was presented in his direct appeal. Doc. 17-2, p. 83. The limitation period for this claim, therefore, was triggered on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

On direct appeal, the Arizona Court of Appeals affirmed Thomas's convictions and sentences on April 25, 2005. Doc. 17-2, pp. 91-113. On October 3, 2005, the Arizona Supreme Court denied review. Doc. 17, p. 3. Thomas then had 90 days to petition the U.S. Supreme Court for review according to Sup. Ct. R. 13. The 90th day, however, was January 1, 2006, which was a Sunday. Monday, January 2, 2006, was a federal holiday because New Years' day was a Sunday, so the deadline was extended to January 3, 2006. Sup. Ct. R. 30. Thomas's judgment became final on January 3, 2006, when he failed to file a petition for review with the U.S. Supreme Court. 28 U.S.C. § 2244(d)(1)(A). His one-year limitation period began running the next day and expired on Wednesday, January 3, 2007. Thomas constructively filed his pending petition in this court on August 9, 2023, more than sixteen years later. Doc. 1, p. 12. It is time-barred.

On May 20, 2010, Thomas filed in state court an untimely notice of post-conviction relief that was eventually accepted for filing. Doc. 17, p. 3. On March 9, 2021, Thomas filed in state court a petition for writ of habeas corpus pursuant to A.R.S. §§ 13-4121, 13-4131(A). Doc. 17, p. 4; Doc. 17-6, p. 9. Neither of these proceedings served to toll the period of limitation pursuant to § 2244(d)(2) because the period had already lapsed when they were filed. *Sharp v. Martel*, 2009 WL 789645, at *4 (S.D. Cal. Mar. 17, 2009), modified (Mar. 24, 2009) ("A state-court petition that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). Moreover, they did not trigger a new one-year limitation period. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[W]e hold that section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed.").

_____

3046–47 (1976)).

In the section of the petition that discusses timeliness, Thomas explained that he was moved from one housing unit to another in August of 2023 and had only limited access to his personal property during that period.  Doc. 1, pp. 10-11.  If the limitations period was still running at this time, Thomas could argue that this period of time should qualify for equitable tolling.  *See Lakey v. Hickman*, 633 F.3d 782, 786 (9th Cir. 2011)  ("[A] petitioner is entitled to equitable tolling [of the limitation statute] only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.")  (punctuation modified), *cert. denied*, 131 S.Ct. 3039 (2011).  The limitations period, however, had already lapsed, so there was nothing to toll.  *See, e.g., Weaver v. Montgomery*, 2015 WL 5000109, at *6 (C.D. Cal. May 13, 2015)  (no equitable tolling where petitioner alleged that a fellow inmate deprived him of his legal file "approximately 7 months after the statute of limitations had already expired."), report and recommendation adopted, 2015 WL 5005774 (C.D. Cal. Aug. 20, 2015).

In his second claim, Thomas asserts that "the State court lacked jurisdiction of the subject matter or over the Petitioner in State court hearing" and he was "denied due process of law in the State court proceeding."  Petition, Doc. 1, pp. 5-7.  Thomas explained that he raised this issue in his state habeas petition.  Doc. 1, p. 7; Doc. 17-6, pp. 11-12;  s*ee also State ex rel. Jones v. Superior Ct. In & For Pinal Cnty*., 78 Ariz. 367, 374, 280 P.2d 691, 696 (1955) (A state habeas petition may only be used to challenge "the jurisdiction of the trial court to pronounce its judgment and sentence upon petitioner.").  In that petition, Thomas argued that he is being illegally confined because the "Arizona Superior Court lacked jurisdiction to hear and/or determine any matter(s) arising from Petitioner's Los Angeles traffic stop because the Petitioner was never brought before [an] L.A. County Municipal Magistrate Judge and given [a] hearing in California to determine whether, in fact, LAPD officers possessed the requisite quantum of probable cause to stop, detain, and restrain the petitioner from engaging in the pursuit of personal liberty."  State Habeas Petition, Doc. 17-6, p. 12.

1    This claim relies on the same facts that underpin Thomas's Fourth Amendment claim.

2    It is also time-barred.  *See above*.  In the alternative, the court finds that this claim is not

3    cognizable in habeas corpus.

4        Thomas's second claim is a challenge to the state's assertion of jurisdiction over his

5    criminal prosecution.  This is not a federal constitutional issue and cannot be raised in a federal

6    habeas petition.  28 U.S.C. § 2254(a);  *see Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct.

7    475, 480 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court

8    determinations on state-law questions.");  *Hubbart v. Knapp*, 379 F.3d 773, 779 (9th Cir. 2004)

9    ("Federal habeas corpus relief is generally unavailable for alleged error in the interpretation or

10   application of state law.") (internal punctuation omitted), cert. denied, 543 U.S. 1071 (2005);

11   *see, e.g., Lewis v. Ryan*, 2017 WL 8787001, at *6 (D. Ariz. Sept. 22, 2017) (The petitioner's

12   assertion that "Maricopa County Superior Court lacked jurisdiction and subject matter

13   jurisdiction over his criminal case" is "a state law claim that is not subject to federal habeas

14   corpus review.") (punctuation modified), report and recommendation adopted, 2018 WL 655069

15   (D. Ariz. Feb. 1, 2018).

16       The petition should be dismissed.  Thomas's claims are either time-barred or not

17   cognizable in habeas corpus.

18

19       Motion to Amend; Actual Innocence

20       Thomas did not file a reply brief, but he did file the pending motion to amend the

21   petition.  Doc. 20.  His proposed amended petition contains what appear to be the same two

22   claims that Thomas raised in his original petition in addition to a claim labeled "Actual

23   Innocence."  Doc. 20-3.  It does not appear, however, that Thomas intends to add a freestanding

24   claim of actual innocence.[3]  He states in his proposed amended petition as follows:

25

26       [3] *See also Trollope v. Stewart*, 2008 WL 2324122, at *5 (D. Ariz. Apr. 15, 2008) ("To the

27   extent Petitioner seeks leave to amend to assert a 'free-standing claim of innocence' with regard to a

     non-capital conviction and sentence, such a claim is not cognizable in a federal habeas proceeding."),

28   report and recommendation adopted, 2008 WL 2324124 (D. Ariz. June 2, 2008).

1
2

> This is an Amended Petition for Writ of Habeas Corpus asserting actual innocence to access the "actual innocence gateway" to federal habeas corpus review that applies to procedural bars as alleged by Respondents in Answer to Petitioner's original Petition.

3
4
5
6
7

Doc. 20-3, p. 26. The court concludes that Thomas filed his motion to amend in order to raise the argument that his failure to file a timely petition should be excused because he is "actually innocent." Doc. 20. The court finds that Thomas's actual innocence argument fails to excuse his untimely filing. Accordingly, his motion to amend should be denied as futile. The court examines in detail Thomas's "actual innocence" argument.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

"When an otherwise time-barred habeas petitioner presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error, the Court may consider the petition on the merits." *Stewart v. Cate*, 757 F.3d 929, 937-938 (9th Cir. 2014) (punctuation modified). "The Supreme Court has cautioned, however, that tenable actual-innocence gateway pleas are rare." *Id*. "A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. The court must "assess how reasonable jurors would react to the overall, newly supplemented record, including all the evidence the petitioner now proffers." *Stewart*, 757 F.3d at 938 (punctuation modified). "Given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected." *Shumway v. Payne*, 223 F.3d 982, 990 (9th Cir. 2000). "'Actual innocence' means factual innocence, not mere legal insufficiency." *Muth v. Fondren*, 676 F.3d 815, 819 (9th Cir. 2012), as amended (May 31, 2012) (punctuation modified). In is instructive to review the evidence presented at trial.

23
24
25

On April 18, 2002, Los Angeles police officers stopped a pickup truck for "speeding and traveling the wrong way on a one-way street." Direct Appeal, Doc. 17-2, p. 92; Doc. 20-3, p. 5.

26
27
28

> When the officers approached the truck Thomas was driving, they noticed that he was sweating profusely and appeared agitated. Although the officers repeatedly commanded Thomas to show them his hands, he ignored their commands and instead appeared to be searching for something in the truck's center console,

prompting the officers to draw their weapons. Thomas eventually got out of the truck. In response to [Officer] Wright's request that Thomas produce his driver's license, Thomas informed him that the license was in a green duffel bag in the truck. Wright asked Thomas if he could look for the identification, and Thomas assented. As Wright picked up the green bag, he noticed a gun positioned underneath the bag. The officers then handcuffed and arrested Thomas for carrying a concealed weapon.

Shortly thereafter, a police sergeant arrived, and Thomas informed him that the gun and the truck belonged to him, and identified himself as "A.". Another officer found the driver's license to which Thomas had referred, but that license listed A.'s name and described him as a fifty-nine-year-old white male. Thomas, an African-American male, was thirty-seven years old at that time. The wallet in which the license had been found was stained with blood. Thomas was then transported to the police station, where officers observed blood stains on his pants.

That morning, the Los Angeles Police Department telephoned Sahuarita police officer Grossclose and requested that he conduct a welfare check at A.'s rural Pima County house. Once there, Grossclose noticed a "drag mark" that led from a tree, past a fence, and to the doorway of the home. Entering the house through an unlocked door, he saw overturned and broken furniture and A.'s body covered by a blanket. Grossclose immediately notified the sheriff's department. The investigation revealed that A. had sustained multiple blunt force wounds, a fractured skull, defensive wounds on his hands, and one gunshot to his head. Broken pieces of a pistol were found near the drag marks outside of the home, and those pieces were later found to have A.'s blood on them. Investigators noticed that one of the windows had been opened.

Thomas's thumb print was found on a doorknob in A.'s house, and his palm print was found on the outside of the open window. *The blood on Thomas's pants was later determined to be A.'s blood*. Investigators also determined that the bullet retrieved from A.'s head had been fired from the gun found in Thomas's possession in the truck when he was stopped in Los Angeles, and that *the gun contained five live rounds and one spent round of ammunition*. The truck Thomas had been driving when he was stopped belonged to A.

Doc. 17-2, pp. 93-94 (emphasis added).

In the sandy area outside [A.'s] residence where the drag marks originated lay a .41-caliber handgun that had been broken into three pieces, each of which was partially covered with what DNA testing conclusively established was [A.'s] blood. . . .

*Two soda cans at the scene—one outside the residence and one inside—contained DNA that partially matched* [*Thomas's*] *DNA*. . . . [Thomas's] shoeprints were found inside the residence. . . . *The blood on the jeans that* [*Thomas*] *was wearing at the time of his arrest was conclusively determined to be from* [A.], as was the blood on the wallet in [Thomas's] green duffel bag. . . .

Direct Appeal, Appellee's Answering Brief, Doc. 17-2, pp. 12-13 (emphasis added).

Thomas argues that he is actually innocent. In his proposed amended petition, he asserts that

A. DNA sample retrieved from 7-up can at scene of crime was not the Petitioner's.

B. Autopsy reported victim sustained two gunshot wounds; revolver retrieved from vehicle driven by Petitioner during traffic seizure exhibited one (1) discharge.

C. Denim jeans worn by Petitioner during traffic seizure [were] not the denim jeans entered into evidence at trial.

D. Witness to theft of pistol did not identify Petitioner, in photo line up, as suspect.

E. Petitioner was never in nor had ever been to Tucson, Arizona on or before 18 Apr. 2002.

F. Petitioner did not murder [A.] on or before 18 Apr. 2002.

Doc. 20-3, p. 24.  In his "Declaration" in support of his motion to amend, Thomas further asserts that (1) he was not advised of his Miranda rights, (2) the Los Angeles District Attorney declined to seek an arrest warrant against him, and (3) the LAPD officer failed to serve traffic complaints on him.  Doc. 20-2, pp, 1-2.  Thomas, however, fails to show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *Stewart v. Cate*,  757 F.3d 929, 937-938 (9th Cir. 2014).

All of Thomas's assertions, with the exception of assertion B, are conclusory statements presented without any evidentiary support.  Accordingly, they are not particularly persuasive.  Assertion D, that the "[w]itness of theft of pistol did not identify Petitioner," would be some evidence that Thomas did not *steal* the pistol, but would not be particularly strong evidence that Thomas did not *use* the pistol to kill A.  It was, after all, found in the victim's pickup truck that Thomas was driving.

Assertion B, that the victim suffered two gun shots but the revolver in his possession showed only one discharge, is supported by an exhibit stating that "There are multiple blunt impact injuries to the head, torso and extremities.  There is a gunshot wound to the head and right lower extremity."  Doc. 20-3, p. 14.  This exhibit is some evidence that a second gun or a second suspect might have been involved, but it is not particularly strong evidence that Thomas is innocent.  After all, "[i]nvestigators . . . determined that the bullet retrieved from A.'s head had been fired from the gun found in Thomas's possession in the truck when he was stopped in Los Angeles . . . ."  Doc. 17-2, p. 94.

1   The Los Angeles Arrest Report indicates that Thomas was not given a *Miranda* warning,

2   but Thomas does not argue why that is evidence of actual innocence.  *See* Doc. 20-3, p. 3; *see,*

3   *e.g., Sanher v. Yates*, 2010 WL 331744, at *2 (N.D. Cal. Jan. 22, 2010) (allegation that "counsel

4   was ineffective in not contending that petitioner's mental illness made a *Miranda* waiver invalid

5   . . . goes to legal innocence, not factual innocence.").  The fact that the Los Angeles police did

6   not prosecute him for possession of a concealed weapon or cite him for traffic infractions is not

7   particularly strong evidence of innocence particularly considering their statement that they

8   declined prosecution because "deft. is to be prosecuted in Arizona on more serious charges . .

9   . ." Doc. 20-3, p. 6.  Moreover, Thomas's arguments that evidence was gathered in violation

10  of his Fourth Amendment rights go to "legal innocence" not "actual innocence," which is what

11  Thomas must prove here.  *See, e.g., Kennedy v. Madden*, 2021 WL 11134125, at *1 (C.D. Cal.

12  Oct. 29, 2021) (Petitioner's argument that "the wiretaps were obtained without probable cause"

13  clearly "challenges the legal sufficiency of his conviction, and does not establish that Petitioner

14  is factually innocent of his crimes.");  *Dionne v. Foster*, 2007 WL 881849, at *2 (D. Idaho Mar.

15  21, 2007)  (The petitioner's assertion that "the alleged evidence recovered after my illegal arrest

16  may not form the basis of probable cause for my arrest" is a legal argument rather than a

17  showing of actual innocence.).  The court concludes that Thomas has not made a showing of

18  "actual innocence" strong enough to excuse his untimely filing.

19      Thomas's motion to amend should be denied as futile.  His "actual innocence" showing

20  is insufficient to excuse his untimely filing.  The two claims contained in the proposed amended

21  complaint raise the same issues that appear in his original petition.  They are either time-barred

22  or non-cognizable state law claims.  *See In re Morris*, 363 F.3d 891, 893 (9th Cir. 2004)  ("Rule

23  15(a) [which governs amendment of the pleadings] applies to habeas corpus actions with the

24  same force that it applies to garden-variety civil cases.");  *Bonin v. Calderon*, 59 F.3d 815, 845

25  (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to

26  amend.").

27

28

1    <u>Motion for Evidentiary Hearing</u>

2          On July 24, 2024, Thomas filed a motion for an evidentiary hearing.  Doc. 22.  He argues

3    that an evidentiary hearing is necessary to correct the "State court's failure to decide upon the

4    merits of Petitioner's traffic seizure or otherwise require Respondents or their State counterparts

5    to establish the requisite quantum of probable cause necessary to initiate such traffic seizure,

6    or demonstrate service of traffic citation(s) or produce valid warrant(s) pursuant to and in

7    violation of the Fourth Amendment."  Doc. 22, pp. 1-2.  In essence, he seeks to relitigate his

8    motion to suppress evidence from the California traffic stop.

9          Thomas argues that he is entitled to an evidentiary hearing "to resolve controverted

10   factual questions" surrounding the State's original denial of his motion to suppress.  Doc. 22-1,

11   p. 6.  He cites the Supreme Court case *Townsend v. Sein*, 372 U.S. 293 (1963) for the

12   proposition that "the District court must grant an evidentiary hearing . . . to resolve controverted

13   factual questions whenever the state has not produced all the portions of the transcript of the

14   testimony in the state court . . . that delineate the fact findings on which the state now relies, or

15   that the state court relied upon in making the finding or demonstrate how the state court reached

16   the factual determination."  Doc. 22-1, p. 6.

17         In their response to the motion, the respondents *did* include a transcript of the trial court's

18   evidentiary hearing on Thomas's original motion to suppress.  Doc. 23-2, pp. 2-87.  Moreover,

19   *Townsend* is no longer the last word on whether a habeas petitioner is entitled to an evidentiary

20   hearing.  Since that case was decided, habeas corpus law has been modified by the Antiterrorism

21   and Effective Death Penalty Act (AEDPA), which "restricts the ability of a federal habeas court

22   to develop and consider new evidence."  *Shoop v. Twyford*, 596 U.S. 811, 819, 142 S. Ct. 2037,

23   2043, 213 L. Ed. 2d 318 (2022).

24         "If a prisoner failed to develop the factual basis of a claim in State court proceedings,"

25   which seems to be Thomas's argument here, "a federal court may admit new evidence, but only

26   in two quite limited situations."  *Twyford*, 596 U.S. at 819, 2044 (punctuation modified) (citing

27   § 2254(e)(2)).  "Either the claim must rely on a 'new' and 'previously unavailable' 'rule of

28   constitutional law' made retroactively applicable by [the Supreme Court], or it must rely on 'a

1   factual predicate that could not have been previously discovered through the exercise of due

2   diligence.' *Id*. (citing § 2254(e)(2)(A)).  "And even if a prisoner can satisfy one of those two

3   exceptions, he must also show that the desired evidence would demonstrate, 'by clear and

4   convincing evidence,' that 'no reasonable factfinder' would have convicted him of the charged

5   crime." *Id*.  (citing § 2254(e)(2)(B)).  "Thus, although state prisoners may occasionally submit

6   new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage

7   them from doing so." *Id*.  (punctuation modified).

8         Thomas fails to provide evidence on either initial prong.  He does not allege that his

9   claim relies on a new and previously unavailable rule of constitutional law.  Neither does he

10  argue that the factual predicate to his claim could not have been previously discovered through

11  the exercise of due diligence.  In fact, the respondent assets that all of the exhibits that Thomas

12  attached to his pending motion *were* "previously discovered" and could have been "submitted

13  in support of Thomas' post-conviction petition."  Doc 23, p. 9.  Section 2254(e)(2) precludes

14  Thomas from presenting any new evidence.

15        Moreover, courts will not grant an evidentiary hearing if it would be futile to do so.  "In

16  deciding whether to grant an evidentiary hearing, a federal court must consider whether such

17  a hearing could enable an applicant to prove the petition's factual allegations, which, if true,

18  would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474,

19  127 S. Ct. 1933, 1940, 167 L. Ed. 2d 836 (2007) "This principle accords with AEDPA's

20  acknowledged purpose of reducing delays in the execution of state and federal criminal

21  sentences." *Id*. at 475  (punctuation modified).

22        Thomas seeks to develop evidence that might help him prove the merits of his Fourth

23  Amendment habeas claim.  This evidence, however, will have little bearing on the court's

24  determination that the claim is time-barred.  Thomas asserts that the "Los Angeles Police

25  Department officials did not present to or serve upon Petitioner traffic citation(s) subjecting

26  Petitioner under any lawful jurisdiction," and argues that this proves "Petitioner's actual

27  innocence," but he does not further explain his legal theory.  *See* Doc. 22-1, p. 4.

28

1    The failure of the police to cite Thomas for traffic violations (assuming Thomas is

2 correct here) is explained by the fact that the police found Thomas in possession of a concealed

3 weapon, which was a much more serious matter.  Moreover, testimony taken at the suppression

4 hearing provided ample evidence in support of the legality of the traffic stop.  At that hearing,

5 Los Angeles Police Department Officer Earl Wright testified that Thomas was stopped after

6 committing several traffic infractions including speeding and driving the wrong way on a one-

7 way street.  Doc. 23-2, pp. 12-19.  On direct appeal, Thomas's counsel conceded that the

8 officers observed "mere traffic violations" and chose not to contest the legality of the initial

9 stop.  Doc. 17-1, p. 82.  Moreover, as the court explained above, Thomas's arguments that

10 evidence was gathered in violation of his Fourth Amendment rights go to "legal innocence" not

11 "actual innocence."  *See, e.g., Kennedy v. Madden*, 2021 WL 11134125, at *1 (C.D. Cal. Oct.

12 29, 2021);  *Dionne v. Foster*, 2007 WL 881849, at *2 (D. Idaho Mar. 21, 2007).

13     It does not appear that conducting an evidentiary hearing would uncover any facts that

14 would show that Thomas is entitled to habeas relief.  Accordingly, the motion for an evidentiary

15 hearing should be denied.  *See, e.g., Shoop v. Twyford*, 596 U.S. 811, 823, 142 S. Ct. 2037,

16 2046, 213 L. Ed. 2d 318 (2022)  (Motion to develop new evidence denied where the habeas

17 petitioner "asserted in passing that the desired evidence could 'plausibly' bear on the question

18 whether to excuse procedural default," but "he did not identify the particular defaulted claims

19 he hopes to resurrect, nor did he explain how the testing would matter to his ability to do so.");

20 *Acosta v. Watson*, 2020 WL 7049322, at *4 (W.D. Wash. June 24, 2020)  "[There] is no basis

21 to discover the factual bases for petitioner's claim or to conduct an evidentiary hearing because

22 federal habeas relief is time barred and the petition should be dismissed upon this basis."),

23 *report and recommendation adopted*, 2020 WL 6282017 (W.D. Wash. Oct. 27, 2020);  *Dorsey*

24 *v. Sullivan*, 2017 WL 5138298, at *5 (S.D. Cal. Nov. 6, 2017) ("Here, however, it is unclear

25 what disputed facts Petitioner wants an evidentiary hearing to resolve because the cited pleading

26 does not contain any facts relevant to the timeliness of Petitioner's Petition or to the

27 applicability of statutory or equitable tolling.").

28

RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order dismissing the petition for writ of habeas corpus.  Doc. 1.  The claims are time-barred or not cognizable.  The motion to amend should be denied as futile.  Doc. 20. The motion for an evidentiary hearing also should be denied as futile.  Doc. 22.

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this report and recommendation.  If objections are not timely filed, they may be deemed waived.  The Local Rules permit a response to an objection. They do not permit a reply to a response without permission from the District Court.

DATED this 15th day of August, 2024.



Honorable Michael A. Ambri
United States Magistrate Judge